IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 9, 2019

**DEVIN WHITESIDE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-16-278     Kyle Atkins, Judge**

_____

**No. W2018-02051-CCA-R3-PC**

_____

The petitioner, Devin Whiteside, appeals the denial of his petition for post-conviction relief, which petition challenged his guilty-pleaded convictions of aggravated robbery, alleging that his guilty pleas were invalid because he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and J. ROSS DYER, JJ., joined.

Alexander D. Camp, Jackson, Tennessee, for the appellant, Devin Whiteside.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In December 2014, the Madison County Grand Jury charged the petitioner with two counts of aggravated robbery and three counts of identity theft. *State v. Devin Whiteside*, No. W2016-00671-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Jan. 30, 2018). There is no recitation of facts in the record on appeal or below, but we glean from the record that the victims, Mr. McCarver and Ms. Edgar,[1] were in a vehicle when the petitioner and co-defendant Gerald Hampton robbed them at gunpoint. The petitioner then used one of the victims' credit cards to make a purchase. Pursuant to a negotiated plea agreement, the petitioner pleaded guilty to two counts of aggravated robbery and received an effective sentence of eight years' incarceration with an 85

_____

[1]     Mr. McCarver and Ms. Edgar's first names are not provided in the record.

percent release eligibility, and the State dismissed the identity theft charges. *Id.*, slip op. at 3.

The petitioner filed a pro se motion to withdraw his guilty pleas in December 2015, alleging that his guilty pleas were the result of "'coercion, duress and fear from [counsel].'" *Id.* (alteration in original). The trial court denied the motion, and this court affirmed the denial on appeal. *Id.*, slip op. at 6-7.

While his motion to withdraw his pleas was pending before this court, the petitioner filed a pro se petition for post-conviction relief, alleging that his sentence was illegal and that his trial counsel performed deficiently. The post-conviction court appointed counsel and held the petition in abeyance pending the outcome of the appeal on his motion to withdraw his pleas. After the resolution of that appeal, the petitioner filed an amended petition for post-conviction relief incorporating the pro se petition and reiterating his claim of ineffective assistance of counsel.

At the October 2018 evidentiary hearing, the petitioner testified that he met with trial counsel "[m]aybe three times" in the year leading up to his scheduled trial. They communicated primarily through writing and "[v]ery seldom . . . talked on the phone." The petitioner stated that he had asked trial counsel to interview several witnesses, including Gerald Hampton, Investigator Aubrey Richardson, the victims, and Alexis Blue, but counsel did not speak with them. Counsel told him that she could not speak with Mr. Hampton, the petitioner's co-defendant, without the permission of the co-defendant's attorney; the petitioner never heard back from trial counsel on her efforts to contact the other witnesses. The petitioner stated that Ms. Blue was later apprehended in connection to this case and that she made a statement to law enforcement, but the petitioner did not learn about that statement until two days prior to his plea deadline. He stated that if he had learned of Ms. Blue's statement sooner, he would have been better equipped to know "how to proceed going to trial," explaining that, other than Ms. Blue, Mr. McCarver was the State's only witness.

The petitioner testified that counsel failed to file several motions that he had requested. First, he asked counsel to provide notice of an alibi defense, stating that his aunt could provide an alibi for him and asserting that this alibi would have proven his innocence. He also asked counsel to move to suppress Mr. McCarver's identification of the petitioner, contending that Mr. McCarver was inconsistent and unsure in making the identification. Finally, the petitioner stated that he asked counsel to move to compel the identity of the State's confidential informant. Although counsel did not file that motion, the petitioner acknowledged that he learned the identity of the informant when he received his discovery materials.

-2-

The petitioner contended that he did not know that he could not appeal his guilty pleas. During the plea submission hearing, he was "unsure of accepting the plea," and the court gave him time to talk with counsel and think about the decision. The petitioner said that trial counsel told him that he would be convicted if he went to trial and would receive "two 12-year sentences consecutively at 85 percent." The petitioner testified that, at that point, he felt that his options were to either take the plea deal or to "go to trial with an unsure lawyer." He described counsel as "already defeated" because "she told me I would lose" at trial. He acknowledged telling the trial court that he had not received any promises or threats related to his guilty plea, but he nonetheless maintained that trial counsel had promised him that he would lose at trial.

During cross-examination, the petitioner acknowledged that he heard the State's evidence at the preliminary hearing and was, thus, aware of the facts the State would have presented against him if he had gone to trial. He acknowledged that Mr. McCarver identified the petitioner as the perpetrator, but he reiterated that Mr. McCarver was "unsure" in making that identification. The petitioner acknowledged that, during his plea submission hearing, the judge informed him of his right to trial, but the petitioner chose to forgo that right because he "had a[n] unsure lawyer" who had "already told me I was going to lose."

The petitioner acknowledged that trial counsel had read Ms. Blue's statement to him a few days before his plea hearing. He had asked counsel for a written copy of the statement, but she did not provide him with one. He explained that he asked the court about the possibility of withdrawing his pleas because he was concerned about Ms. Blue's statement and because he did not want to take the plea deal, but he felt that his "options w[ere] slim and running out." He said that he told the court that he was satisfied with counsel's representation despite her not having filed the requested motions because he intended to withdraw his plea "later on down the road." He chose not to raise his concerns during the plea hearing because he preferred to wait until he withdrew his plea. The petitioner asserted that he repeatedly told trial counsel that he did not want to take the State's plea offer, but he ultimately accepted it because "[t]hat's what I had to accept." He acknowledged that the decision to plead guilty was his and that he was not forced to do so.

On redirect examination, the petitioner recalled asking the court twice about withdrawing his plea, and the court proposed resetting the plea hearing to give the petitioner time to consider his decision. At that time, counsel spoke with the petitioner in the court's holding cell and, when the petitioner told her that he wanted to go to trial, counsel told him that he would lose his case if he went to trial. The petitioner recalled

-3-

counsel's telling him that his co-defendant had already pleaded guilty and that the victim would identify him as the perpetrator. The petitioner reasoned that, because trial counsel guaranteed that he would receive maximum, consecutive sentences, he did not have an option other than to plead guilty. He stated that he had lost faith in his attorney and asserted that he was under duress and coercion when he entered his plea.

Trial counsel testified that she began working on the petitioner's case between his preliminary hearing and his indictment. His family had told her that the petitioner was at an orientation at the Tennessee College of Applied Sciences at the time the aggravated robbery was alleged to have occurred. In investigating the petitioner's alibi, she learned that the petitioner "did not show up for the . . . orientation." She stated that she would not file a motion for an alibi defense if she could not support the motion because "the State and the Court are going to be looking for you to back that up" and because the lack of substantiation could be damaging to the defense. In preparing for this case, counsel reviewed all discovery materials, met with the petitioner, and talked to the petitioner and his family over the telephone. She also obtained the transcript from the preliminary hearing. She testified that she found no legal basis on which to suppress the victim's identification of the petitioner.

Trial counsel obtained all of the State's evidence through the district attorney's open-file policy, but she did not receive Ms. Blue's statement until "later in the game." Although she gave the petitioner a copy of all discovery materials, counsel did not give him a copy of Ms. Blue's statement, acknowledging that that was "just a slip-up," but stating that she "did go over it with him" and "read it to him." She also told the petitioner her opinion on the statement.

The State initially offered the petitioner a plea agreement that provided for a 12-year sentence to be served at 85 percent release eligibility, but trial counsel was able to negotiate it down to eight years with the dismissal of the identity theft charges. Counsel stated that, during the plea submission hearing, the petitioner asked the court about withdrawing his plea, and the court gave him time to discuss the plea with counsel. She told the petitioner that the plea deal "was the best outcome that he was going to get, considering the facts of the case." She "explain[ed] to him that based on the facts of the case and the evidence that would be presented at trial that there was a strong likelihood that he would be convicted" of all of the charges. She also explained to him "that there was the possibility of . . . consecutive sentencing, and that he was running that risk if he went to trial in this case." Counsel contended that she was prepared to go to trial, but she told the petitioner that "he was running a big risk" if he rejected the plea offer because "the likelihood of conviction was high." Counsel stated that it was the petitioner's decision to take the plea agreement.

Counsel explained that the petitioner's two aggravated robbery convictions related to two different victims who were in the same vehicle at the time of the robbery. She said that the petitioner "felt that because he wasn't identified by the female [victim] that he couldn't be convicted of that one." Counsel explained to him, however, that one victim's inability to identify him "didn't matter." Counsel affirmed that she explained to the petitioner all of his rights and discussed all of the evidence. She maintained that she was prepared and would have taken the case to trial if the petitioner had wanted to.

During cross-examination, trial counsel could not recall specifically whether the petitioner had requested a written copy of Ms. Blue's statement, but she said, "If I failed to give him a physical copy of it, then that's my bad. But as far as him knowing what was in that statement, he was fully aware of that. We went over it." She agreed that Ms. Blue's statement was "somewhat exculpatory." Counsel was unable to speak with Ms. Blue because Ms. Blue "was on the run for the longest" time, and counsel could not "track her down." Counsel acknowledged that the petitioner asked her to speak with his co-defendant, but the co-defendant's attorney would not permit her to do so. At the petitioner's request, counsel also attempted to speak with the victims. Although she was unable to get in touch with them, she had the transcript of their testimony from the preliminary hearing. She stated that she spoke with Investigator Richardson "several times." Counsel said that she explained to the petitioner that there was no basis on which to suppress the male victim's identification of the petitioner and that she could not move to suppress the female victim's failure to identify him. She asserted that she kept the petitioner apprised of "everything" that she did in his case.

Counsel did not know why the petitioner was hesitant to take the plea deal and said that when she first explained the deal to him, the petitioner expressed that he felt that he had to take it because Ms. Blue was going to testify against him. Counsel told the petitioner that he could still go to trial, but the petitioner chose to take the plea deal because he believed that trial would not "work out." Trial counsel stated that she expected the court to strike the plea agreement after the petitioner asked about withdrawing his plea. When she spoke to the petitioner in the holding cell, she "was very straightforward" and "asked him what the heck he was doing." She explained to the petitioner that he could later move to withdraw his plea but that his chances of succeeding on such a motion were "slim to none." Counsel further explained to the petitioner "what he was facing if we went to trial, what type of evidence we would be looking at, and what [her] professional opinion was as far as what the outcome would potentially be." Counsel denied guaranteeing the petitioner that he would be convicted at trial; rather, she told the petitioner that "the likelihood of conviction [wa]s very strong."

The post-conviction court denied relief finding, as relevant to this appeal, that the issue of whether the petitioner's guilty pleas were involuntary and unknowing as a result of counsel's deficient performance was previously determined by the denial of the petitioner's motion to withdraw his pleas, stating, "He was fully advised of his rights during that guilty plea proceeding. He was represented. He indicated to the [c]ourt on that occasion, and reaffirmed it again here today, that he was satisfied with his attorney at the guilty plea hearing." The post-conviction court, however, went on to address the specific allegations of ineffective assistance of counsel that the petitioner raised in his petitions. The court accredited trial counsel's testimony, finding that counsel made a reasonable attempt to interview every witness that the petitioner mentioned, made a strategic and informed decision to not pursue an alibi defense, had no basis on which to move for suppression of issues of identification, and informed the petitioner of Ms. Blue's statement before the plea hearing.

In this timely appeal, the petitioner reiterates his claim of ineffective assistance of counsel, arguing that counsel failed to fully explain the consequences of the guilty plea and that counsel's deficient performance caused him to enter a guilty plea under coercion and duress. The State asserts that the petitioner's claim of ineffective assistance of counsel was previously determined. Alternatively, the State contends that the petitioner's claim has no merit.

We first address the State's assertion that the petitioner's claim of ineffective assistance of counsel was previously determined. To be sure, in his motion to withdraw his pleas, the petitioner argued that his pleas were involuntary because counsel had failed to provide him with certain information relevant to his case. *See Devin Whiteside*, slip op. at 7. Although that claim related to trial counsel's conduct, this court did not consider the issue as an ineffective assistance of counsel claim under *Strickland v. Washington*. *See id.*, slip op. at 6-7; *see also Strickland v. Washington*, 466 U.S. 668 (1984). Therefore, the ineffective assistance of counsel claim has not been previously addressed on the merits and, consequently, has not been previously determined. *See* T.C.A. § 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing."). As such, we will address the merits of the petitioner's claim.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to

the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S .W.2d 240, 246 (Tenn. Crim. App. 1998).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (alteration in original) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Wilson*, 31 S.W.3d at 195 (alterations in original) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Upon our review, we conclude that the record supports the post-conviction court's denial of post-conviction relief. The petitioner alleges that counsel failed to fully inform him of the consequences of his plea, specifically, that he would be unable to appeal it. Counsel's accredited testimony, however, established that she told the petitioner that a motion to withdraw his plea would likely be unsuccessful, and, during the plea submission hearing, the petitioner testified that he understood that, in entering a guilty plea, he was giving up his right to trial and appeal. Even if counsel performed deficiently by failing to inform the petitioner that he could not appeal his guilty plea, the petitioner has failed to establish that he was prejudiced by counsel's error because the trial court specifically informed the petitioner of the matter in the plea hearing.

The petitioner also argues that counsel coerced him into pleading guilty by promising him that he would be convicted and would receive the maximum sentence if he went to trial. This claim is belied by counsel's accredited testimony that she did not guarantee a conviction, but rather, she told the petitioner that "the likelihood of conviction [wa]s very strong." Trial counsel's testimony also established that she explained to the petitioner his sentencing exposure and the likely outcome of taking the case to trial and that she told the petitioner that the plea agreement was "the best outcome that he was going to get" considering the State's evidence. In consequence, the petitioner has failed to establish that his guilty pleas are invalid because of counsel's deficient performance.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE